IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE
OF THE NAACP, et. al.,

    *Plaintiffs*,

v.                                                          Case No.:  4:21cv187-MW/MAF

LAUREL M. LEE, in her official
capacity as Florida Secretary of
State, et al.,

    *Defendants,*

and

NATIONAL REPUBLICAN
SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL
COMMITTEE,

    *Intervenor-Defendants.*
_____/

### ORDER ON DEFENDANT SUPERVISORS' MOTION FOR SUMMARY JUDGMENT

    This is a voting case. This Court has considered, without hearing, the parties' motions for summary judgment. This Order addresses the motion filed by Defendant Latimer and joined by Defendant White ("Defendant Supervisors"). ECF Nos. 278 and 289. This Court addresses the motion filed by Defendants Lee, Doyle, and Hays by separate order.

Plaintiffs have challenged several new laws enacted or amended by the Florida Legislature in SB 90. Defendant Supervisors have moved for summary judgment, asserting Plaintiffs lack standing to challenge these laws—in other words, that neither Defendant has done or will do anything to intentionally violate Florida voters' rights. This Order addresses Defendant Supervisors' arguments, starting with whether Plaintiffs have demonstrated standing at the summary-judgment stage.[1]

I

To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And they must do so for each statutory provision they challenge. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "independent obligation . . . to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute"). Plaintiffs proceed under two theories of standing, organizational standing and associational standing. This Court discusses each in turn.

---

[1] The parties are well aware of this case's underlying facts and procedural history, and thus this Court will not restate them here.

An organization may have standing to assert claims based on injuries to itself if that organization is affected in a tangible way. *See Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))). Here, Plaintiffs proceed under a diversion-of-resources theory. "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

In addition to organizational standing, an organization may sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) ("*GBM*"). As discussed below, Plaintiffs' members have standing as to the challenged provisions of SB 90 with respect to the Defendant Supervisors. Additionally, this lawsuit is germane to Plaintiffs, whose core purposes involve registering voters, voter education, encouraging electoral participation, and advocating for accessibility for

Florida voters. Finally, neither the claims asserted, nor the relief requested requires the participation of the individual members in this lawsuit. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003); *GBM*, 992 F.3d at 1316 n.29 ("[P]rospective relief weigh[s] in favor of finding that associational standing exists.").

"The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Critically, "each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* (quoting *Lujan*, 504 U.S. at 561). Accordingly, "when standing is raised at the summary judgment stage, the plaintiff must 'set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true.' " *Id.* (quoting *Lujan*, 504 U.S. 561).

Defendant Supervisors assert Plaintiffs have not demonstrated that they have standing to proceed against Defendants Latimer and White. But this Court recognized Plaintiff's cognizable injuries under a diversion-of-resources theory and associational standing theory at the pleading stage, ECF No. 249 at 15-23, and now Plaintiffs have put meat on the bones to show that the challenged provisions burden

their members' and constituents' voting rights by limiting access to drop boxes, voting line relief activities and expression, and voting by mail.[2]

Plaintiffs respond with evidence that, by operation of the challenged law restricting drop boxes, Hillsborough County will no longer offer a 24/7 drop box that was previously available, and that Miami-Dade County will no longer make two drop box locations available to voters on Election Day and the Monday before Election Day. *See* ECF Nos. 314-18 at 3, 314-12 ¶ 10, 314-10 at 18, 314-19 at 5. In addition, Plaintiffs have offered evidence that voters have had to wait in lines longer—sometimes, substantially longer—than 30 minutes in Hillsborough and Miami-Dade Counties and that Plaintiffs' members are self-censoring due to the challenged "line warming" ban's alleged vagueness. *See* ECF No. 315 at 16-17. *See also*, ECF Nos. 314-10 at 52-53, 314-4 ¶ 240, 314-11 at 6, 314-7 ¶¶ 10-11, 314-2 ¶ 2, 314-14 at 172. Plaintiffs have also produced record evidence of the burdens the

---

[2] Although Defendant Supervisors do not challenge Plaintiffs' diversion-of-resources injuries, the record includes evidence to support Plaintiffs' organizational theory for standing. *See, e.g.*, ECF No. 313 at 26-31. For example, Plaintiff Common Cause asserts the challenged provisions necessitate the hiring of at least five new community organizers to educate voters and determine what assistance they need to vote in light of the challenged provisions. ECF No. 306-18 ¶ 10. But for the challenged law, Common Cause would use the funds diverted to hiring these canvassers and producing new voter education materials specific to the challenged provisions to, instead, continue its "broader voter education and election protection work, that is not specific to SB 90's restrictions." *Id*. Likewise, Plaintiff DRF is spending between $50,000 and $100,000 to prioritize an accessibility audit of all Supervisors of Elections websites based on the new vote-by-mail application restriction. ECF No. 306-19 ¶¶ 12-14. Plaintiff DRF asserts these funds are diverted from other projects focused on expanding *all* aspects of election accessibility. *Id*.; *see also id*. ¶ 9 (listing other activities that Plaintiff DRF would otherwise use its resources for, including "advocating for more accessible VBM access through the state," and "pursuing lobbying efforts to increase supervised facility voting under [Florida law]").

new vote-by-mail repeat-request requirements impose on voters, including Plaintiffs' members. *See, e.g.*, ECF No. 314-14 at 27-28, 139-40; ECF No. 314-17; ECF No. 314-10 at 91-93; ECF No. 314-16 ¶ 23. *See also* ECF No. 313 at 31-32.

Defendant Supervisors also challenge Plaintiffs' showing as to traceability and redressability, noting that they have not done anything or said they might do anything that causes Plaintiffs' asserted injuries. Not so. As this Court previously noted, Defendant Supervisors are statutorily tasked with enforcing the challenged provisions—Sections 101.69, 101.62(1)(a), and 102.031(4)(a)-(b), Florida Statutes. *See* ECF No. 249 at 26. And Plaintiffs have cited evidence of Defendant Supervisors actions toward enforcing such provisions. Upon review of the record, Defendant Supervisors' argument does not change this Court's conclusion as to these standing requirements from the pleading stage. *See* ECF No. 249 at 29-30. Accordingly, the facts and all reasonable inferences drawn therefrom demonstrate that Plaintiffs have standing to proceed at the summary judgment stage.[3]

---

[3] Standing jurisprudence in the Eleventh Circuit is evolving. This Court reiterates that Plaintiffs must establish standing at each stage of the case, including trial. The facts and all reasonable inferences in favor of Plaintiffs at this stage demonstrate that Plaintiffs have standing, but more granular facts may be required at trial to establish the same. *See Jacobson*, 974 F.3d at 1250. Plaintiffs' counsel should be prepared to introduce evidence with specificity as to the diversion of resources necessitated by the challenged law and the identifiable burdens the challenged provisions impose upon their members or constituents.

II

Next, Defendant Latimer—belatedly joined by Defendant White—moves for summary judgment against Plaintiffs with respect to "any *as applied* challenge which may be inferred from Plaintiffs' pleadings, to the extent such a challenge might be focused upon Hillsborough County's Supervisor of Elections and upon his conduct of future elections." ECF No. 278 at 4 (Latimer Motion); *see also* ECF No. 289 ¶ 8 ("Supervisor White joins the Motion for Summary Judgment filed by Supervisor Latimer as to any as applied challenge that may be inferred from Plaintiffs' pleadings to the extent such a challenge might be focused upon Miami-Dade County's Supervisor of Elections.").

Here, although Plaintiffs have asserted, after the fact, that they intended to bring only facial challenges, ECF No. 315 at 9, their Amended Complaint does not make clear whether Plaintiffs mount an as-applied or facial challenge. On the one hand, Plaintiffs claim that "[t]his action is brought . . . to enforce Plaintiff Florida NAACP's right under the First Amendment . . . to freely associate and engage in protected speech and expression." ECF No. 45 ¶ 168. On the other hand, Plaintiffs request broad relief, demanding "[a]n injunction barring each and every Defendant-Supervisor of Elections . . . from enforcing and implementing . . . the Line Relief Restriction." *Id.* ¶ 230.

But this imprecision is not surprising. "[T]he distinction between facial and as-applied challenges" is fluid. *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). And the difference between the two turns not on what the parties have pleaded but rather on the relief the court grants. *Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1338 (11th Cir. 2020). Accordingly, the Eleventh Circuit has expressed a willingness to permit parties to change their focus from a facial to an as-applied challenge "at the summary judgment stage." *Id.* (citing *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013)). Nonetheless, as this Court noted in its order on Defendant Lee's motion for summary judgment, the distinction between as-applied and facial challenges is consequential with respect to Plaintiffs' First Amendment challenge to the non-solicitation provision. Accordingly, Defendant Latimer's motion is **GRANTED in part** only as to Count IV of the Amended Complaint to the extent Plaintiffs raise a facial challenge to the non-solicitation provision under the First Amendment, ECF No. 45 at 72.[4]

---

[4] This Court recognizes that Plaintiffs' overbreadth challenge is, necessarily, a facial challenge under the First Amendment. But there, Plaintiffs' claim does not necessarily rise or fall depending on whether the First Amendment reaches Plaintiffs' activity. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66 (1981) ("Because appellants' claims are rooted in the First Amendment, they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own."). Likewise, whether a law implicates the First Amendment or not, "[w]hen vagueness permeates the text of such a law, it is subject to facial attack." *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999). Accordingly, this Court makes clear that it *does not* grant summary judgment on Plaintiffs' overbreadth or vagueness claims alleged in Count V of the Amended Complaint.

III

Aside from asserting no case or controversy exists for Plaintiffs' case to proceed, Defendant Supervisors assert they are entitled to summary judgment as to Plaintiffs' preemption claim in Count IX of the Amended Complaint, ECF No. 45. This Court previously dismissed Plaintiffs' claim to the extent it challenges section 104.0616, Florida Statutes. *See* ECF No. 249 at 27-28. However, Count IX remains pending with respect to the Defendant Supervisors' enforcement of section 102.031, Florida Statutes, which restricts certain activities within the "no-solicitation zone" at polling places. Plaintiffs claim the expanded restrictions on "voting line relief"—restrictions that Defendant Supervisors are responsible for enforcing—conflict with, and are therefore preempted by, federal law. Defendant Supervisors' assertion that no claim has been presented against them in Count IX is belied by a review of the Amended Complaint, the parties' briefing, and the evidence in the record. Accordingly, given that Plaintiffs' have demonstrated their standing to proceed as to each of the remaining challenged provisions, Defendant Supervisors' motion for summary judgment, ECF No. 278, is otherwise denied.

Accordingly,

**IT IS ORDERED:**

Defendants' motion for summary judgment, ECF No. 278, is **GRANTED in part** and **DENIED in part**. The motion is granted only to the extent that Plaintiffs

mount a facial challenge to the non-solicitation provision under the First Amendment in Count IV of the Amended Complaint. The motion is otherwise denied. Going forward, for the benefit of this Court and to avoid any prejudice to Defendants at trial, **Plaintiffs shall include in their pretrial stipulation due December 27, 2021, a list of each claim at issue and identify whether Plaintiffs are proceeding with an as-applied or facial challenge—or both—as to each claim**. If neither designation is applicable, the Plaintiffs must so state. This Court requires notice of the Plaintiffs' position ahead of trial for purposes of focusing this Court's attention during the presentation of evidence.

**SO ORDERED on December 17, 2021.**

s/Mark E. Walker  
**Chief United States District Judge**
